

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 9, 2026**

_____
**United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § § § | **Chapter 11** |
| **Clements Electric Texas, LLC,** | § § | **Case No. 24-33418-mvl11** |
| **Debtor.** | § § § | |

### MEMORANDUM OPINION AND ORDER HOLDING ADRIANO BUDRI IN CONTEMPT OF COURT AND SANCTIONING HIM FOR FILING ABUSES

Comes now before the Court is a matter in connection with the *Sua Sponte Order for Adriano Budri to Appear Before the Court on June 3, 2026, at 9:30 a.m. and Show Cause Why He Should Not Be Further Sanctioned for Violation of Court Orders* (the "**Show Cause Order**") entered by the Court on May 15, 2026 [ECF No. 232]. As detailed in the Show Cause Order, the Court ordered Adriano Budri ("**Mr. Budri**") to appear before the Court, in person, and show cause why he should not be held in contempt of court and/or further sanctioned for continued and persistent violations of the *Order Denying Motions Filed by Adriano Budri, Designating Adriano*

1

*Budri as Vexatious Litigant, and Imposing Pre-Filing Restrictions* (the "**Vexatious Litigant Order**") entered by the Court on April 28, 2026 [ECF Nos. 191, 192], and further amended on May 29, 2026 [ECF No. 245].[1]

The Court held a hearing with respect to the Show Cause Order on June 3, 2026 (the "**Show Cause Hearing**"). Counsel for Clements Electric Texas, LLC (the "**Debtor**") appeared, as did the Subchapter V Trustee (the "**Trustee**"). Additionally, counsel for the United States Trustee (the "**UST**") appeared. Mr. Budri appeared, *pro se*, telephonically, notwithstanding explicit instructions by the Court to appear at the Show Cause Hearing in person.

After considering the evidence presented and the testimony provided, the Court issued a bench ruling finding Mr. Budri in contempt of court. Likewise, the Court stated that it would issue its own memorandum opinion and order, further detailing its bench ruling at the Show Cause Hearing. Accordingly, the Court hereby holds Mr. Budri in contempt of court and will impose those sanctions described at length herein. The following constitutes the analysis underlying the Court's rulings.[2]

## I.    FACTUAL HISTORY

The Court has now had three separate opportunities to address Mr. Budri's actions by written orders—namely, the Vexatious Litigant Order, the Show Cause Order, and the *Order Denying Adriano Kruel Budri's Various Motions for Reconsideration* (the "**Reconsideration**

---

[1] All references to the Vexatious Litigant Order contained herein shall be in reference to ECF No. 245.

[2] The Court notes that the Debtor filed its own *Motion for Entry of Order Finding Adriano Budri in Contempt of Court and for Sanctions* (the "**Debtor's Sanctions Motion**") on May 19, 2026 [ECF No. 236]. The Debtor also filed a *Supplement* to the Debtor's Sanctions Motion on May 28, 2026 [ECF No. 243]. Subsequently, Mr. Budri filed a *Creditor Adriano Kruel Budri's Opposition and Response to Debtor's Motion for Entry of Order Finding Adriano Budri in Contempt and for Sanction [ECF Docket # 236] and Creditor Adriano Kruel Budri's Opposition and Response to Debtor's Supplement to Motion for Entry of Order Finding Adriano K. Budri in Contempt and for Sanctions [ECF No. 243]* on June 18, 2026 [ECF No. 270]. For purposes of this Order, the Debtor's Sanctions Motion, the Supplement filed in support of same, and the Response filed by Mr. Budri at ECF No. 270 shall not be further addressed or made part of the ruling herein.

**Order**") entered by the Court on May 5, 2026 [ECF No. 207]. However, the highly unusual factual history of this case, as well as Mr. Budri's incessant filings and correspondence with the Court, its staff, and various parties to the case (the "**Budri Filings**") bear re-emphasizing.

On October 30, 2024, the Debtor filed bankruptcy pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code [ECF No. 1]. On November 25, 2024, the Debtor filed its Schedules and Statement of Financial Affairs (the "**SOFA**") [ECF Nos. 34 and 35]. In neither the Schedules nor the SOFA did the Debtor allude to any unsecured claims held by Mr. Budri. However, according to the Budri Filings, there existed a purported prepetition dispute over $179 between Mr. Budri and the Debtor and/or its principal, Mr. Michel Clements ("**Mr. Clements**") with regard to electrical repairs that the Debtor completed at Mr. Budri's residence.

More specifically, Mr. Budri contended in many of the Budri Filings that the Debtor owed Mr. Budri $179 arising from a refund claim in connection with an investigation by the Texas Department of Licensing & Regulation (the "**TDLR**"), which, on February 28, 2025 (post-petition), resulted in the TDLR sending the Debtor a letter (the "**TDLR Letter**") stating that the Debtor owed Mr. Budri the aforementioned amount. *See* ECF No. 130 at 2; *see also* ECF No. 163-5 (a copy of the TDLR Letter dated February 28, 2025). At a hearing held on April 21, 2026, in connection with both the *Motion to Designate Adriano Budri as a Vexatious Litigant and Impose Pre-Filing Restrictions* filed by the Debtor on April 13, 2026 [ECF No. 155], as well as various docket entries comprising the Budri Filings (the "**Vexatious Litigant Hearing**"), Mr. Clements testified that, upon receipt of the TDLR letter, he contacted the TDLR to provide notice of the Debtor's pending bankruptcy case, to which the TDLR instructed Mr. Clements that the Debtor did not need to pay the $179. *See* ECF No. 203 (transcript of the Vexatious Litigant Hearing).

On June 17, 2025, Mr. Budri filed a Proof of Claim (Claim No. 12) (the "**Budri Claim**") in the amount of $179, months after the January 8, 2025, claims bar date. Nevertheless, it is undisputed that Mr. Budri did not receive prior notice of the Debtor's bankruptcy case or the bar date for filing non-governmental proofs of claim prior to January 8, 2025. ECF No. 130 at 2–3. Beginning no later than October 3, 2025, Mr. Budri was added to the service list. *See* ECF No. 84 (Certificate of Chapter 11 Plan and Notice of Confirmation Hearing).  Nevertheless, Mr. Budri did not actively participate in the bankruptcy proceedings, including plan confirmation.

On January 28, 2026, the Debtor filed an objection to the Budri Claim as late-filed. ECF No. 114. Mr. Budri did not file a corresponding motion to deem the Budri claim timely filed. However, after the Debtor determined that Mr. Budri had not received timely notice of the bar date, the Debtor quickly withdrew its objection on February 8, 2026.[3] Therefore, the claim was deemed allowed. It was at this point, in late February 2026, after the Debtor has already withdrawn the objection to Mr. Budri's claim, that Mr. Budri began filing a litany of repetitive pleadings contending that the Debtor: (1) knew about the outstanding $179 claim; (2) failed to amend the Schedules or include Mr. Budri on the Debtor's creditor matrix in a timely fashion that would have provided Mr. Budri notice of the case prior to the bar date to file his proof of claim; (3) prevented Mr. Budri from participating in the distribution of the estate's assets; and (4) intentionally excluded Mr. Budri from the above-referenced documents as a "deliberate tactical move to deny to [Mr. Budri] his procedural due process" and constitutional rights. ECF No. 130 at 2–3.  Mr. Budri began

---

[3] ECF No. 127 ("Debtor in the above-styled and referenced bankruptcy case . . . files this its Notice of Withdrawal of Debtor's Objection to Proof of Claim of Adriano Kruel Budri (Claim No. 12) . . . and would show the Court that it no longer desires to pursue the Objection. The Objection was filed because the Proof of Claim was filed late and there is nothing on the docket where the creditor requested to file a late claim in the case. Had such a request been made it would have been approved.").

filing a series of motions in relentless succession, requesting myriad forms of relief, including

$20,000 in sanctions against the Debtor, Mr. Clements, and Ms. Lindauer. *See* ECF Nos. 130, 132.

The Court emphasizes that the uncontroverted evidence and testimony provided by both

the Trustee and Mr. Budri, show that Mr. Budri's purported $179 claim was **paid in full** by the

Trustee (as disbursing agent under the confirmed plan) on or around March 13, 2026, as a means

of resolving this dispute and reducing the exorbitant fees being run up by the Debtor and the

Trustee to address Mr. Budri's repetitious filings and harassing communications.[4] *See* ECF No.

203 at 67:3–67:10 (direct examination of the Trustee, in which she stated Mr. Budri was paid in

full on March 13th).

However, despite their best efforts to resolve the matter, Mr. Budri's furious onslaught of

correspondence with the Debtor, counsel for the Debtor, Ms. Joyce Lindauer ("**Ms. Lindauer**"),

the Trustee, the UST, and even the Court's courtroom deputy, nevertheless continued in the form

of dozens of filings and dozens more pieces of correspondence. At the Vexatious Litigant Hearing,

it was also brought to the Court's attention that Mr. Budri's worrisome behavior had gone beyond

written communications and pleadings, as Mr. Clements testified that he spotted Mr. Budri driving

near his residence on several occasions over the past few months and had even managed to take a

photograph of Mr. Budri's vehicle down the street from Mr. Clements' house. *See* ECF No. 163-

4 (photograph of Mr. Budri's car accompanied by a Texas Motor Vehicle Registration report

listing the owner of the vehicle in the photograph as Adriano Kruel Budri). Mr. Clements further

testified that Mr. Budri's appearance near his home was disturbing enough to the point where Mr.

Clements confronted Mr. Budri in his car, at which time Mr. Budri sped away. When questioned

---

[4] To be certain, as an unsecured creditor (even with an allowed claim), Mr. Budri was not entitled to have his claim paid in full at this time. However, the Court does not question the Trustee's decision to pay the claim in an effort to stop the bleeding of estate expenses.

by the Court as to whether he had driven near Mr. Clements' home, Mr. Budri's testimony was littered with nonsensical equivocations, but there is **<u>no doubt</u>** that Mr. Budri drove near Mr. Clements' home for no legitimate reason related to this bankruptcy case.[5]

Following the Vexatious Litigant Hearing, the Court entered the Vexatious Litigant Order, denying the Budri Filings that were considered in connection with the Vexatious Litigant Hearing, designating Mr. Budri as a vexatious litigant, and imposing pre-filing restrictions as to any attempted filings by Mr. Budri other than those associated with his appellate rights. *See* ECF No. 245. More specifically, the Court ordered that Mr. Budri was barred from filing anything further with the Court, other than a notice of appeal of the Vexatious Litigant Order or related appellate filings, without prior authorization by the Court first. Furthermore, the Court held that if Mr. Budri did not comply with the Vexatious Litigant Order and continued to file motions, responses, letters, and/or any other documents without prior authorization, the Court would hold Mr. Budri in contempt, and he would be subject to further sanctions. *Id.*[6]

Mr. Budri failed to heed the Court's continued warnings and blatantly ignored Court instructions and/or mandates in several respects.

### A. *Unauthorized Motion Practice and Violations of the Vexatious Litigant Order*

As noted in the Show Cause Order, Mr. Budri filed no less than five (5) additional pleadings without first requesting and receiving permission to do so. *See* ECF Nos. 213, 218, 219, 220, and

---

[5] Email correspondence between Mr. Budri and Ms. Lindauer on April 16, 2026, shows that Mr. Budri admits that the photograph of his vehicle was "taken on a public street while verifying [Mr. Clements'] mailing address" and claims that it was a "legal action and does not constitute in any moment harassment or stalking or invasion of privacy." *See* ECF No. 171-1 at 8.

[6] Pursuant to the Reconsideration Order, alongside a denial of various Budri Filings seeking reconsideration of the Vexatious Litigant Order, the Court once again warned Mr. Budri that, should he file any pleadings without first requesting and receiving permission from the Court, other than filings related to his rights to an appeal, the Court reserved its right to hold him in contempt of court and impose further sanctions at the appropriate juncture. ECF No. 207. The Court also ordered that Mr. Budri was required to cease all correspondence with the Court and its staff immediately unless such correspondence was in connection with requesting permission to file a pleading with the Court. *Id.*

222 (various Budri Filings involving a motion to compel disclosure of purported *ex parte* communications, a motion to stay bankruptcy proceedings, and a "notice" of the purported *ex parte* communications Mr. Budri contends took place between Ms. Lindauer and the Court's courtroom deputy). Since the filing of the Show Cause Order, Mr. Budri filed four (4) more documents without requesting and/or receiving permission to do so. *See* ECF Nos. 238, 263, 268, and 272.[7] In terms of a propensity for filing, the Court notes that, between the first Budri Filing on February 23, 2026 and June 29, 2026, Mr. Budri has filed over thirty (30) pleadings[8] with regard to various grievances he has with parties in the case, including, but not limited to, the Budri Claim for $179, objections to the expedited nature of the Vexatious Litigant Hearing, purported "fraud" and "perjury" committed by Ms. Lindauer, and so called "*ex parte* communications."

### B. Voluminous, Duplicative, and Extraneous Correspondence with the Court

Setting aside the Budri Filings, Mr. Budri has continued to disregard the Court's requirement in the Reconsideration Order that he cease all non-pertinent correspondence with the Court's staff and has instead engaged in unending and extraneous correspondence with the Court. More specifically, Mr. Budri has opted to simply email the Court and the other parties various "notices," "letters," or "alerts" that effectively serve as attempted filings in and of themselves. For example, the Court notes that it received an email "alert" from Mr. Budri on May 26, 2026, in which he wrote the Court's courtroom deputy to inform her about purported violations of Rule 9014 of the Local Bankruptcy Rules for the Northern District of Texas (the "**Local Rules**"). The

---

[7] ECF Nos. 238, 263, and 272 were summarily stricken. ECF No. 272 was purposefully docketed (but not authorized by the Court to be filed by Mr. Budri) for the sole purpose of illustrating the types of duplicative filings that Mr. Budri continually attempts to file.

[8] The Court notes that this estimate does not include any: (1) responses and/or objections to motions filed by other parties; (2) pleadings in connection with Mr. Budri's appellate rights; or (3) motions that he was expressly authorized by the Court to file.

substance of the email, much like the majority of the email correspondence received from Mr. Budri, unmistakably reads like an informal motion.

To provide another example, on June 12, 2026—following the Show Cause Hearing in which the Court issued an oral ruling finding Mr. Budri in contempt of court for voluminous, extraneous filings—Mr. Budri filed a *Letter in Lieu and Addressed to the U. S. Bankruptcy Judge Michelle V. Larson, Sitting at the United States Bankruptcy Court for the Northern District of Texas at Dallas Division* (the "**Letter in Lieu**"). ECF No. 268.[9] The substance of the Letter in Lieu, much like virtually every other attempted filing by Mr. Budri, concerns several of his greatest hits in terms of argumentation, as he once again asserts: (1) "fraud" committed in the form of a purported photoshopped exhibit of Mr. Budri's car; (2) "flagrant" violations of Mr. Budri's constitutional rights with respect to the "21-day safe harbor time frame for fair notice" and the ruling issued by District Court for the Northern District of Texas (the "**District Court**") in *Dondi Properties Corporation v. Commerce Savings and Loan Association*;[10] and (3) a slew of purported violations committed by Ms. Lindauer on behalf of the Debtor, among others. *See id*. To be certain: (1) the purported "fraud" committed by counsel for the Debtor has been the subject of at least six (6) previous Budri Filings; (2) the dispute over the photograph of Mr. Budri's car was expressly addressed and denied in the Reconsideration Order;[11] and (3) while Mr. Budri has invoked *Dondi* standards and 21-day safe harbor protections to an interminable degree, that argument has been

---

[9] To be certain, the Letter in Lieu filed by Mr. Budri was not authorized by the Court in any respect. Rather, the Court permitted the Clerk of Court to enter the letter on the docket to illustrate one of the dozens of duplicative attempted filings by Mr. Budri following entry of the Vexatious Litigant Order.

[10] *See* 121 F.R.D. 284 (N.D. Tex. 1988).

[11] Indeed, Mr. Budri continues to seek leave to file pleadings regarding this issue even subsequent to the Show Cause Hearing. Such requests have been repeatedly denied due to their substantive mootness, repetitiveness, lack of coherence, or, in many cases, a combination of all three.

addressed and denied both in the Reconsideration Order and through multiple denied motions for leave on more occasions than the Court can count. *See* ECF Nos. 207, 232.[12]

The two examples provided herein are anything but anomalies. Rather, these pseudo-filings have become regular, if not daily, occurrences for the Court to handle. When questioned by the Court with respect to his incessant correspondence, Mr. Budri tried to draw a distinction by claiming that the Court's previous Orders did not speak to the **volume** of correspondence of motions for leave that he was permitted to file. *See* ECF No. 267 at 26:9–26:22. In other words, Mr. Budri attempted to split hairs and argue that he complied strictly with the Court's requirements, regardless of the overwhelming volume of requests for permission he sought.

### C. *Failure to Appear at the Show Cause Hearing Against Court Orders*

Notwithstanding Mr. Budri's actions in relation to filings and correspondence, the Court also notes his failure to appear in person pursuant to the Court's Orders. As mandated in the Show Cause Order, Mr. Budri was required to appear in person at the Show Cause Hearing on June 3rd. After numerous emails and requests to appear telephonically, primarily in relation to vague assertions of medical and transportation issues, Mr. Budri was granted permission to file a sworn declaration under seal, explaining what exact "issues" were preventing him from complying with the Court's Order. *See* ECF No. 255 (minute entry entered by the Court authorizing Mr. Budri to file a sworn declaration with respect to his alleged medical and transportation issues). Mr. Budri filed two Declarations under seal on June 1, 2026 [ECF Nos. 256, 258], and represented that he was experiencing generalized medical issues and technological limitations that prevented him from

---

[12] While producing an exact count of the attempts by Mr. Budri to file additional motion is an inefficient use of the Court's time, no less than **twenty-five (25) additional pleadings** have been sought (and mostly denied) since entry of the Vexatious Litigant order on April 21, 2026.

appearing in person or via Webex for the Show Cause Hearing.[13] The Declarations contained **no**
specifics, notwithstanding the fact that they were sealed. *See* ECF Nos. 256, 258 (the Declarations,
which are expressly noted as sealed on the docket).

At the Show Cause Hearing, Mr. Budri appeared telephonically against Court orders. When
further questioned as to why he could not supply the Court with the requested information with
respect to his medical and/or transportation issues, Mr. Budri provided the Court with a litany of
additional excuses for not only why he could not appear in person due to medical reasons, but also
why he could not provide further detail as to his alleged medical condition. These baseless excuses
included: (1) testifying that he was not "qualified" to discuss his medical condition because he was
not a doctor; (2) he needed to schedule a doctor's visit and receive a medical certification as to his
condition before he could speak further on any confirmed diagnosis; and (3) that any such
disclosure of his medical conditions at a public hearing would affect his ability to find new
employment. ECF No. 267 at 7:20–11:11.[14] To be certain, the Court did not ask Mr. Budri to
provide a medical diagnosis of any kind, but simply asked him to articulate what symptoms, if
any, he was currently suffering from that might impede his ability to appear in Court as required.
*Id.* at 10:10–10:16. Mr. Budri continually declined to do so.

Likewise, Mr. Budri's alternative reason for not appearing in Court in person was due to
purported car troubles and his inability to drive long distances without first having his car repaired.
*Id.* at 10:21–11:1. More specifically, Mr. Budri testified that his car purportedly needed new brake
pads, rotors, struts, and a front axle, all of which seemingly began two weeks prior to the Show

---

[13] To be clear, the Court did not permit Mr. Budri to appear via Webex at the Show Cause Hearing. Nevertheless,
given Mr. Budri's continued assertions that, even if he was permitted the ability to appear on video, he did not possess
the technological capabilities to do so, the Court authorized Mr. Budri to file a Declaration explaining why he was
incapable of appearing via Webex as well.
[14] The Court notes that while Mr. Budri testified that he was currently seeking new employment as a truck driver, he
has not been employed as a truck driver since 2017. ECF No. 267 at 9:5–10:9.

Cause Hearing. *Id.* at 13:4–19:19.[15] The Court notes that the purported car troubles were not in existence when Mr. Budri failed to appear for the Vexatious Litigant Hearing on April 21st, and that he testified that the car is still drivable (but just not for what he alleged to be long distances, such as driving from his home to Dallas).

## I.    STANDARD OF REVIEW

Courts possess the inherent power to "protect the efficient and orderly administration of justice and . . . to command respect for the court's orders, judgments, procedures, and authority." *Crear v. JPMorgan Chase Bank, N.A.*, 491 F. Supp. 3d 207, 218 (N.D. Tex. 2020) (quoting *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993)) (internal quotations omitted). Included in that power is the court's ability to "levy sanctions in response to abusive litigation practices." *Id.* (citation omitted) (internal quotations omitted). Furthermore, bankruptcy courts maintain numerous tools with which they may sanction the conduct of individuals, and pursuant to § 105 of the Bankruptcy Code, "a bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the [Bankruptcy Code]." *Id.* (quoting *Placid Refin. Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997)).

A court's power to sanction a litigant, especially in the form of an injunction related to that litigant's filing practices, must be balanced with the constitutional protections of due process afforded to litigants under the Fourteenth Amendment. *See Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004) (holding that imposing a pre-filing injunction pursuant to 28 U.S.C. § 1651 (the "**All Writs Act**") must be "used sparingly, however, consistent with

---

[15] The Court also notes that Mr. Budri failed to appear via Webex, stating via Declaration that he did not possess any technology that could support a video camera of any kind, and that he did own a mobile phone. ECF No. 258. Rather, Mr. Budri represented that he possessed only a landline phone and a desktop computer running on outdated software. ECF No. 267 at 17:3–17:19.

11

constitutional guarantees of due process of law and access to the courts"). Accordingly, several sister circuits have held that judges "should not in any way limit a litigant's access to the courts absent 'exigent circumstances, **such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions**.'" *Id.* at 817–18 (quoting *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993)) (emphasis added); *see also Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir. 1980) (holding that a limitation placed on a pro se litigant's access to the court "should be approached with particular caution" and should "remain very much the exception to the general rule of free access to the courts").

Thus, while sanctions for such abusive litigation practices "may be appropriate when a *pro se* litigant has a history of submitting multiple frivolous claims," it is equally important that courts evaluate both the necessity of a pre-filing injunction as well as the scope of its limitations on a vexatious litigant's access to the court. *Crear,* 491 F. Supp.3d at 218. Accordingly, a court may impose a pre-filing sanction on a vexatious litigant, if the following factors weigh in favor of doing so:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008) (citation omitted).

However, the Fifth Circuit has also held that a previously established pre-filing injunction may be modified to further deter vexatious litigants, so long as the presiding court properly weighs the above-mentioned *Baum* factors in relation to the vexatious litigant's continued behavior. *See Baum*, 513 F.3d at 189 ("Because the district court has jurisdiction to sua sponte impose a pre-filing injunction to deter vexatious filings, it also has jurisdiction to sua sponte modify an existing permanent injunction to accomplish the same goal."); *see also Matter of Carroll*, 850 F.3d 811,

815 (5th Cir. 2017) (holding that not only do federal courts have the ability to enjoin vexatious litigants pursuant to the All Writs Act, but that bankruptcy courts may also enjoin future filings pursuant to § 105(a) of the Bankruptcy Code).

Moreover, sister circuits have established that injunctions restricting further filings are appropriate where "[1] the litigant's lengthy and abusive history is set forth; [2] the court provides guidelines as to what the litigant may do to obtain its permission to file an action; and [3] the litigant receives notice and an opportunity to oppose the court's order before it is implemented." *Andrews v. Heaton*, 483 F.3d 1070, 1077 (10th Cir. 2007). Although "litigiousness alone will not support an injunction restricting filing activities," so as to deny a litigant meaningful access to the court, the right to access the courts is "neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *Loveless v. State*, Case No. CIV-25-00593, 2026 WL 674872, at *3 (W.D. Okla. Mar. 10, 2026) (citation omitted) (internal quotations omitted). Accordingly, a court may tailor its injunction on future filings to cover filings related to particular subject matter. *See id*. at *4 (citation omitted); *see also In re Koshkalda*, 622 B.R. 749, 768–69 (9th Cir. B.A.P. 2020) (acknowledging that courts will generally tailor the scope of a filing restriction to restrain a vexatious litigant from reopening litigation based on previously adjudicated facts and issues) (citation omitted) (internal quotations omitted).

Finally, the imposition and/or modification of a pre-filing injunction may be even more appropriate when the vexatious litigant continues to engage in conduct that has already been subject to sanctions. More specifically, when a vexatious litigant is currently subject to monetary sanctions and/or an existing pre-filing injunction, yet those sanctions prove to be "inadequate" and "fruitless" due to the litigant's undeterred conduct, an injunction may be necessary "to prevent or

respond to such filings", and the scope of same would be at the court's discretion. *Nix v. Major League Baseball, Off. of the Comm'r of Baseball*, Civ. Action No. H-21-4180, 2022 WL 2118986, *21 (S.D. Tex. June 13, 2022) (citation omitted) (internal quotations omitted).

## II.   DISCUSSION

The Court need not spend additional pages reiterating Mr. Budri's status as a vexatious litigant—he undoubtedly is one under any metric. The Court has also examined his vexatious behavior *ad nauseum* over the course of three (3) separate Orders.[16] Therefore, the Court stands by its prior directive of a pre-filing injunction and will maintain same. Rather, the issue before the Court is whether Mr. Budri is in contempt of court and should be subjected to **further sanctions** based on the actions listed above, which followed the Court's prior Orders and the pre-filing injunction. The Court finds Mr. Budri in contempt and subject to further sanctions for three distinct reasons.

### A.  Violations of the Vexatious Litigant Order

First, and most notably, Mr. Budri, despite not having requested permission to file additional motions, nor having received permission to file same, unilaterally opted to defy the Vexatious Litigant Order and continue filing numerous duplicative, frivolous, and nonsensical pleadings. The chronology of these violations bears examination.

As of the date of entry of the Show Cause Order, Mr. Budri had filed five (5) pleadings without requesting or receiving prior authorization to do so at ECF Nos. 213, 218, 219, 220, and 222. Following entry of the Show Cause Order, but prior to the Show Cause Hearing, Mr. Budri filed two (2) more unauthorized filings at ECF Nos. 238 and 260. Following the Show Cause Hearing—where the Court orally ruled that Mr. Budri would be sanctioned for the aforementioned

---

[16] The Court's Orders at ECF Nos. 207, 232, and 245 are incorporated herein.

unauthorized filings—Mr. Budri filed at least two (2) additional unauthorized pleadings at ECF Nos. 268 and 272. In sum, in the time since the Court expressly designated Mr. Budri as a Vexatious Litigant and required him to seek and receive authorization for any additional filings, he has violated that Order **at least nine (9) times**.

Despite his attempts to the contrary, the *Creditor's Response to the Sua Sponte Order to Show Cause* (the "**Show Cause Response**") filed by Mr. Budri on June 1, 2026 [ECF No. 257], provides little in the way of sufficient justification for why Mr. Budri disobeyed the Vexatious Litigant Order. Mr. Budri instead spent numerous pages using inconsistent reasoning, deflecting any blame on his part, and accusing the Court of "deep-seated favoritism" to the Debtor. ECF No. 257.

The closest Mr. Budri comes to some semblance of an explanation for his actions is contending that his unauthorized filings at ECF Nos. 213 and 218 were mailed with requests for authorization to file, and therefore his attempts to file same were made in good faith. *Id.* at 1. But Mr. Budri's purported "good faith" is undercut by repeated attempts to shift the blame and responsibility for his behavior onto the other parties and the Court. In fact, following his attempt at a "good faith" explanation for why he filed the unauthorized Budri Filings, Mr. Budri resorted to arguing that: (1) the Vexatious Litigant Order effectively violates his First and Fifth Amendment Rights, as well as 42 U.S.C. § 1983; (2) the Court is biased; and (3) the vexatious litigant "tag" placed on Mr. Budri is effectively a conspiracy to "bypass" the Local Rules and professional standards of conduct. *Id.* at 2–9. Put simply, Mr. Budri's explanations come in one of two flavors: (1) victimhood; or (2) conspiratorial targeting by the Court and the Debtor.

Mr. Budri has likewise been unable to provide any sufficient justification or testimony for why he continues—**to this day**—to file numerous duplicative pleadings, relitigating the same,

baseless arguments he has pursued unsuccessfully for months. These continued filings, each reiterating the same meritless arguments, are illustrative of the Court's basis for designating Mr. Budri as a vexatious litigant in the first place, which was in large part due to the repetitive nature of his filings. However, abstractly referring to the repetitive nature of the Budri Filings does not capture how grossly duplicative the Budri Filings are in terms of the subject matter Mr. Budri remains fixated upon.

Accordingly, the Court went through the exercise of documenting and itemizing how many times certain topics appeared in the Budri Filings after entry of the Vexatious Litigant Order. To the Court's closest estimation, since the oral ruling that designated Mr. Budri a vexatious litigant on April 21, 2026, Mr. Budri has continued to relitigate the topics listed below over the course of the following number of pleadings: [17]

| **Topic:** | **Number of Pleadings:** |
|---|---|
| Alleged attorney "misconduct" committed by Ms. Lindauer | 13 |
| Alleged violations of the "21-day safe harbor rule" | 9 |
| Alleged violations of *Dondi* | 7 |
| Arguments related to the purportedly "fraudulent" photograph of Mr. Budri's car | 6 |
| Extraneous allegations concernig Mr. Clements | 6 |
| Arguments with respect to Mr. Budri's due process and/or First Amendment rights | 7 |

---

[17] To be certain, the above estimations were conservatively tailored down so as to not include any authorized Budri Filings or any filings in connection with Mr. Budri's appellate rights. The above-referenced numbers also do not include any of the dozens of motions for leave or emails from Mr. Budri asserting similar arguments. Moreover, if the Court were to consider the repetition of certain topics from the filing of the Debtor's Objection to the Budri Claim on January 28, 2026, the estimates are much higher. For instance, since January 28, 2026, Mr. Budri has raised arguments with respect to Ms. Lindauer in approximately twenty-two (22) pleadings, and raised arguments with respect to his due process rights in approximately fifteen (15) pleadings.

However, when tasked with clearing the relatively low bar of explaining his behavior and/or justifying the purpose behind the filings in the Show Cause Response, Mr. Budri simply raised many of the same arguments yet again, piling on additional constitutional arguments as a means of bolstering his position. Thus, the Court need not discern why Mr. Budri continually violates the Court's Orders. Whether his actions are born out of compulsion or boredom, his violations of the Vexatious Litigant Order, without any reasonable explanation, cannot go unaddressed. Accordingly, the Court finds Mr. Budri in contempt for violation of the Vexatious Litigant Order.

### B.    *Voluminous, Duplicative, and Extraneous Correspondence with the Court*

Second, despite clear instructions in the Reconsideration Order and the Show Cause Order to cease all extraneous, unsanctioned communications with the Court (other than pleadings with respect to Mr. Budri's appellate rights or requests for permission to file), the Court's staff, and the other parties, Mr. Budri continuously bombarded the Court and other parties with an absurd volume of emails. Aside from the **<u>dozens</u>** of emails containing "motions for leave" sent by Mr. Budri in less than two (2) months, Mr. Budri also sent countless more emails to the Court's staff containing substantive arguments entitled "letters" and "alerts" to the Court, or via email responses after his motions for leave were denied.[18]

In other words, to maneuver out of the Court's pre-filing restriction, Mr. Budri chose to effectively treat the Court's setting inbox like his own personal docket, snatching up any opportunity to relitigate his frivolous claims, regardless of whether the Court gave permission. As the Court referenced at the Show Cause Hearing, Mr. Budri has effectively made the theme of the

---

[18] Most recently, Mr. Budri has given his pseudo-motions for leave even more creative titling, such as titling his correspondence as a "Résumé of Events" or a "Request for Joint Statement of Facts," as attempts to work around previously denied motions for leave. Notwithstanding the creative titling, such filings give way to the same unrelenting, meritless arguments.

children's book, *If You Give a Mouse a Cookie*, a reality.[19] When he was paid in full by the Debtor

and the Trustee in order to settle his purported grievances with the other parties, Mr. Budri pivoted

to requesting additional money and sanctions.[20] When Mr. Budri has received permission by the

Court to file a new pleading on the docket, each permitted pleading begets additional attempted

filings containing either duplicative information to the permitted filing or extraneous information

to what he was approved to file. When notified that his motions for leave will be denied, he simply

attempts to argue the substance of his denied motions through a responsive email or repackages

the denied motions under different email headers. Each act of mild compliance is followed by a

smorgasbord of additional recalcitrance in the way of attempted filings, emails, or grievances that

Mr. Budri tacks on. Moreover, he attempts to escape these violations by wielding the Court's own

Orders against itself and engaging in a purposefully cabined, duplicitous reading of his own filing

restrictions.  The Court finds that Mr. Budri has violated both the terms and the spirit of its Orders

for several reasons.

First, the Vexatious Litigant Order expressly references his "relentless" and "daily"

correspondence with the parties and the Court, as well as a "litany of repetitive pleadings." ECF

No. 245 at 5, 6, 10. To the extent Mr. Budri is arguing that the ordered paragraphs at the end of

the Vexatious Litigant Order do not literally contain restrictions as to the volume of motions for

leave and/or email correspondence with the Court, the Court finds such a contention to be nothing

---

[19] As the book illustrates, "If you give a mouse a cookie, he's going to ask for a glass of milk. When you give him milk, he'll probably ask for a straw. When he's finished, he'll ask for a napkin. Then he'll want to look in a mirror to make sure he doesn't have a milk mustache." Lauren Joffe Numeroff, *If You Give a Mouse a Cookie* (Harper & Row, 1985). The story, as the Court understands it, provides a comical, yet important, lesson about the endless pursuit of trying to satiate someone else's insatiable wants and needs.

[20] To be certain, Mr. Budri's latest grievance is that he was not paid the interest and expenses in connection with his unsecured claim. Mr. Budri has sought, and been denied, an opportunity to file an amended proof of claim, **post-confirmation**, requesting an additional **$41.76** (although the latest correspondence from Mr. Budri has inconsistently referenced the additional amount as $41.17).

more than an ill-conceived attempt to focus on form over substance. What Mr. Budri seems to be willfully ignoring is that the **entire purpose** behind the Vexatious Litigant Order and the pre-filing restriction was to quell (albeit unsuccessfully in hindsight) Mr. Budri's "furious onslaught of correspondence" with everyone in the case, including the Court's courtroom deputy. *Id.* at 6.

Additionally, to the extent the Court was not clear enough in the Vexatious Litigant Order, it did Mr. Budri the courtesy of adding express language to the ordered paragraphs in the Reconsideration Order, requiring Mr. Budri to **cease all further correspondence with the Court and its staff immediately, other than correspondence in connection with requesting permission to file pleadings**. ECF No. 207 at 8 (emphasis added). The purpose behind this requirement, as detailed in the Reconsideration Order, was because Mr. Budri had already been "repeatedly warned to stop emailing Court staff and did not." *Id.* at 7. Nevertheless, he continues to circumvent the Court's pre-filing restrictions through purposeless, duplicative email correspondence relating to matters and grievances he has struck out on countless times before.

Finally, setting aside the page and word count that this Court has already provided to document Mr. Budri's relentless insolence, the Court notes that the bankruptcy court is merely the latest court to be subjected to his vexatious tendencies. Since 2017, Mr. Budri has been a party in seven (7) cases[21] within the District Court, has filed nine (9) appeals[22] to the Fifth Circuit Court of Appeals, and has litigated several cases at the administrative law tribunal level as well. However, given Mr. Budri's feigned ignorance with respect to the volume of his filings, perhaps it bears repeating what other courts had to say about Mr. Budri's litigation tactics.

---

[21] The cases before the District Court in which Mr. Budri was the Plaintiff are listed as follows: (1) 3:17-cv-02945-C-BN; (2) 3:17-cv-03241-C-BN; (3) 3:19-cv-00409-E-BH; (4) 3:21-cv-01872-L-BT; (5) 3:25-cv-03533-N-BN; (6) 3:26-cv-01674-N-BN; and (7) 4:26-cv-00073-Y.

[22] Mr. Budri's appeals to the Fifth Circuit are as follows: (1) Case No. 18-60579; (2) Case No. 19-10857; (3) Case No. 19-11119; (4) Case No. 19-11203; (5) Case No. 20-60073; (6) Case No. 20-60268; (7) Case No. 20-10612; (8) Case No. 20-60574; and (9) Case No. 21-11201.

The Honorable Rebecca Rutherford not only noted that, "[Mr.] Budri is no stranger to federal court," and that "[n]o court or administrative body has found that any of [Mr.] Budri's claims has merit." *Budri v. First Fleet Inc.*, Case No. 3:21-cv-1872, 2021 WL 6496786, at *1 (N.D. Tex. Oct. 22, 2021). Judge Rutherford also noted Mr. Budri's "multitude of new filings" filed without leave of court, his filing of more than 25 motions in two months since initiating the case, and his filing of "at least ten motions after he was ordered to refrain from filing any further motions, pleadings, notices, or other submissions in this case." *Id.* at *3–5 (citation omitted) (internal quotations omitted).

The Honorable Irma Ramirez noted that, despite two separate warnings by the District Court, Mr. Budri had filed at least 30 motions as well as "multiple notices and statements" in an attempt to relitigate his claims and harass the defendants. *Budri v. FirstFleet Inc.*, Civ. Action No. 3:19-CV-0409, 2019 WL 5580105, at *6 (N.D. Tex. Sept. 20, 2019). The Court notes that Judge Ramirez's documentation of Mr. Budri's continued non-compliance with the District Court's directives was preceded by an order from the District Court mere months before, which outlined in great detail the parameters around what Mr. Budri could file in the case and how. *See Budri v. FirstFleet Inc.*, Civ. Action No. 3:19-CV-0409, 2019 WL 11704212, at *3 (N.D. Tex. May 23, 2019).

The Honorable Sam Lindsay expressly noted that Mr. Budri was "abusing the judicial process and is a serial litigator." *Budri v. Firstfleet, Inc.*, Civ. Action No. 3:21-CV-1872, 2021 WL 5629149, at *2 (N.D. Tex. Nov. 30, 2021). Indeed, Judge Lindsay noted that Mr. Budri filed three more pleading within just days of the District Court's previous order, holding that Mr. Budri "continues to disrespect the lawful orders of this court" through "effrontery and brazen disrespect." *Budri v. Firstfleet, Inc.*, Civ. Action No. 3:21-CV-1872, at *1 (N.D. Tex. Dec. 6, 2021).

20

The Fifth Circuit Court of Appeals has specifically documented Mr. Budri's conduct on three separate occasions. On one occasion, the Fifth Circuit noted Mr. Budri's filing of "approximately 50 motions" in a particular matter, as well as his "repetitive and abusive litigation and wasting of resources," and imposed explicit pre-filing limitations in connection with "any future proceeding in this court to which [Mr.] Budri is a party." *Budri v. Admin. Rev. Bd., United States Dept. of Lab.*, 858 Fed. App'x 117, 123–28 (5th Cir. 2021) (per curiam).

Finally, even administrative law judges presiding over Mr. Budri's cases have noted specific actions that bear a striking resemblance to Mr. Budri's conduct in this case. In fact, Administrative Law Judge Patrick M. Rosenow noted: (1) the filing of "dozens of documents and motions in direct defiance" of court orders, using an email address "[Mr. Budri] was specifically told not to use"; (2) multiple warnings to cease his vexatious conduct; and (3) that the "record is clear that [Mr. Budri] acted in bad faith in terms of intentionally filing documents contrary to my specific orders." *Id.* at 126 (quoting *Budri v. Firstfleet, Inc.*, ARB No. 2020-0047, ALJ No. 2020-STA-00037 (ARB Jun. 18, 2020)).

The above-referenced cases serve only to highlight the consistent prior sentiments issued by virtually every level of federal court. In each instance, the presiding judge noted not only the volume of Mr. Budri's filings, but the volume of subsequent warnings, restrictions, and sanctions that he received in return. Nevertheless, like the unstoppable force of vexatiousness that he seemingly is, Mr. Budri continues to engage in the **exact same behavior** in this Court. In short, there is no version of reality in which the Court is willing to entertain that Mr. Budri was unaware that his actions were untoward or that they were not **identical** to the violative actions he committed for nearly a decade prior. Therefore, the Court finds Mr. Budri in contempt of court for his voluminous and extraneous correspondence with the Court.

### C. Non-compliance with Court Orders Regarding an In-Person Appearance at the Show Cause Hearing

As established on the record at the Show Cause Hearing, the Court's third and final basis for holding Mr. Budri in contempt of court pertains to his continued refusal to appear in this Court in person, despite the requirement in the Show Cause Order that he do so. *See id*. at 21:6–21:9. When he was given the chance by the Court to explain why he could not appear in person by way of sealed declaratoin (a generosity by the Court), Mr. Budri continued to rely on abstract, non-specific medical issues for why he could not appear. The Court does not find Mr. Budri's Declarations as to his medical conditions, transportation issues, and/or technological deficiencies sufficient to justify his refusal to appear in this Court.

The Court emphasizes that it oversees thousands of cases on its consumer docket, with many of those cases involving Chapter 7 and Chapter 13 debtors who are in severe financial distress at the time of filing. In nearly all of those instances, the debtors—many of whom are *pro se*—manage to comply with the Court's instructions to appear either in person or via Webex, including traveling to a public place (such as a library) to gain access to a video camera. Mr. Budri has not exerted even a modicum of effort to comply with the Court's instructions. It is clear from the record that Mr. Budri's car has not prevented him from driving near Mr. Clements' house when he felt inclined, his technology has never failed him when he utilized Google Gemini[23] in formulating his pleadings, and his medical condition has never once prevented him from drafting pleadings or harassing the Court and the other parties for months on end.

The fact that Mr. Budri feigns medical, financial, transportational, or technological distress whenever he is asked to put in the tiniest sliver of effort to litigate his dozens of pleadings is not

---

[23] ECF No. 267 at 77:3–77:19 (cross-examination of Mr. Budri by the UST, in which he testified that he uses the artificial intelligence platform, Google Gemini, to help draft his filings).

lost on the Court. His conscious choice to deplete judicial resources and force the Debtor's estate to incur thousands in attorney's fees and expenses, all while he remains masked behind a keyboard and a landline, cannot be characterized as unintentional. It is yet another vexatious tactic that he has deployed at the expense of virtually every other party in the case. Accordingly, the Court also finds Mr. Budri in contempt of court for failure to appear in person at the Show Cause Hearing.

### D. *Appropriate Sanctions*

Now that the Court has articulated why it finds Mr. Budri is in contempt of court, the issue remains with respect to **how** the Court should appropriately address Mr. Budri's vexatiousness pursuant to the *Baum* factors. This is especially true, given that the Court has already imposed a pre-filing restriction and warned Mr. Budri numerous times that continued abuse of court procedures would result in further sanctions. Likewise, Mr. Budri's vexatious behavior has already resulted in numerous pre-filing restrictions and/or warnings by the District Court and Fifth Circuit numerous times before. Yet, in many of those cases, Mr. Budri continued to file more pleadings, harass the courts and the parties involved, and waste exponentially more judicial resources.

Put simply, the Court finds no hesitancy in further sanctioning Mr. Budri pursuant to the first two *Baum* factors. Beginning with the first factor, his history of vexatious, harassing, and duplicative lawsuits has been well-documented by this Court, the District Court, and the Fifth Circuit. Likewise, as to the second factor, Mr. Budri has not asserted a reasonable good faith basis for dozens of pleadings and correspondences over, **at best**, $42. Mr. Budri's actions and filings speak much louder than any of his attempts at conjuring a good faith basis for his outlandish behavior. Rather, the basis for the Court's sanctions contained herein rests primarily upon the final two factors echoed in *Baum*.

Starting with the adequacy of alternative sanctions, the Court is reminded of a quote from Christopher Nolan's 2008 classic, *The Dark Knight*, in which fictional character Alfred Pennyworth lamented that, "Some men aren't looking for anything logical, like money. They can't be bought, bullied, reasoned, or negotiated with. Some men just want to watch the world burn." *The Dark Knight* (Warner Bros. Pictures, 2008). At this juncture, given both the ever-changing purposes behind Mr. Budri's filings, as well as the difficulty the Court has in constructing appropriate sanctions for a vexatious litigant who seemingly knows no bounds in terms of continued infractions, the above-referenced quote is incredibly apt in this case.

As the record reflects, there is no logical foundation underlying Mr. Budri's filings, as nearly all of the material he files or attempts to file is replete with baseless factual allegations, unsubstantiated legal theories, and/or largely fabricated grievances. His pleadings are a nightmarish merry-go-round of the same inane topics, ranging from allegations of photoshop, to the purported spoliation of evidence, then to accusations of fraud committed by opposing counsel. He further coats each of these pleadings in a constitutional lacquer of sorts, routinely asserting due process and First Amendment violations (among others) as a means of bolstering his allegations. When the relief sought in these filings is inevitably denied for one of their myriad legal deficiencies, Mr. Budri seemingly asks Google Gemini to draw another topic out of a hat and drafts several more pleadings to boot.

It is also clear to the Court that, at this point, money is neither the purpose behind Mr. Budri's conduct nor a sanction that would likely preclude his continued behavior. As for the purpose behind his filings, Mr. Budri testified that—despite having his unsecured claim of $179 paid in full—he believes he is still owed "additional compensation" in the form of interest and expenses for the $179, which amounts to $41.76. *See* ECF No. 267 at 73:19–73:23 (testimony by

Mr. Budri stating that he was entitled to a total of $220.76, which consisted of his $179 unsecured claim, alongside interest and expenses).[24] However, this amount is only the latest form of relief that Mr. Budri has requested, and although he testified that he would stop filing and "drop everything" if he were paid the $41.76, every single action taken by Mr. Budri up to this point says otherwise. *Id.* at 66:13–66:16. Rather, much like the last time his purported claim was satisfied in full in an attempt to resolve his grievances, paying him the $41.76 will most likely yield to Mr. Budri moving the goalposts for relief and holding the Court and the parties hostage for something else.

Likewise, the Court is not of the belief that monetary sanctions by themselves would likely deter Mr. Budri's behavior either. The Court emphasizes that Mr. Budri's asserted unemployment likely makes any imposition of a significant monetary sanction toothless as a deterrent. Moreover, given Mr. Budri's dozens of filings and attempted correspondence related to a mere $41.76, the Court can easily forecast a reality in which any monetary sanctions imposed would serve as outlets of additional litigation for Mr. Budri to pursue, thereby making any monetary judgments significantly difficult to collect on.

Finally, it is clear that Mr. Budri cannot be reasoned or negotiated with in virtually any context. The Debtor, the UST, and the Trustee have gone to great lengths to resolve Mr. Budri's claims, and each attempt has only resulted in further filings. When his motions for leave are denied, he simply finds other methods to argue the substance of his motions via cleverly titled emails and continued requests for clarification on why his motions were denied. When provided with the

---

[24] The Court notes that the official transcript for the Show Cause Hearing incorrectly states that Mr. Budri testified that the amount owed was $220.17, and Mr. Budri's correspondence following the Show Cause Hearing has referenced same. However, the amount originally stated by Mr. Budri in a denied motion for leave to amend the Budri Claim, and expressly referenced in emails sent by Mr. Budri to the Court on June 1, 2026, is $220.76.

Court's reasoning, Mr. Budri relentlessly searches for another way onto the docket.[25] Lastly, when he has reached the end of his rope in other courts and exhausted all means of filing and corresponding with whichever court is unfortunate enough to cross paths with him, Mr. Budri looks for another case to bog down. It is only after the Court has had the opportunity to assess Mr. Budri's actions both in this case and his prior cases that it is left with the conclusion that Mr. Budri is not truly interested in money, due process, freedom of speech, or any other **actual form of relief**—he is only interested in watching the Court's docket and the estate's resources burn, metaphorically speaking.

As the Fifth Circuit specifically noted, Mr. Budri has historically worked in "circuitous fashion, seemingly employing a 'squeaky wheel' or 'wear them down' legal strategy characterized by quantity, repetition, and obstinance, rather than quality, logic, and prudence, with little regard for legal requirements." *Budri*, 858 F. App'x at 125. Moreover, "Budri persists in this pursuit despite having been warned multiple times, including by this court, against repetitive and abusive litigation and wasting of resources." *Id.* at 126. Not only did the Fifth Circuit echo that "[e]very adjudicative authority he has attempted to invoke has instructed him that he is not entitled to any relief," but that, despite his subjective belief that he has been wronged, "he appears to equally believe that his status as a victim relieves him of the obligation to comply with procedural rules and orders." *Id.* (citation omitted).

While the Court wholeheartedly adopts this assessment, it respectfully contends that the Fifth Circuit's analysis does not fully encapsulate either the tangible detriment he has caused the

---

[25] Following the Show Cause Hearing, Mr. Budri has now resorted to emailing the Court and requesting rulings on various Budri Filings that the Court has already ruled on in prior Orders, such as ECF Nos. 186 and 199. When the Court denied Mr. Budri's requests for duplicative rulings, he proceeded to continue emailing the Court with "clarifications" as to his requests and, unsurprisingly, requesting the very same relief once again. The Court finds this correspondence to be further evidence of Mr. Budri's contemptuous behavior and considers such correspondence in connection with the sanctions imposed herein.

26

Debtor's estate in this case or the intangible detriment he has caused the Court and its ability to manage the thousands of other cases it oversees. Mr. Budri's actions are not simply part of a "wear them down" strategy but are instead an exercise in achieving total and absolute submission of every other party. To engage with Mr. Budri, whether by opposition or by mere correspondence, is to be effectively drowned in a riptide of nonsensical filings, with each pleading pulling the Court and the other parties further under. Beyond just the quantity and repetition of his filings are the time and resources necessary to appropriately handle each new ridiculous argument Mr. Budri conjures up next. It is through this approach that Mr. Budri achieves some modicum of success. To be certain, the Debtor and the Trustee did not pay Mr. Budri's $179 claim in full because he was legally entitled to that amount or entitled to be paid ahead of all other creditors in this case. He was paid solely by becoming such an exhausting, pernicious nuisance until the Debtor and the Trustee simply capitulated.

Yet, it is in Mr. Budri's exhaustion of the Debtor and the Trustee's willpower to resist his demands that the Court turns to the last remaining *Baum* factor—the extent of the burden on the courts and other parties resulting from a party's filings. As the Trustee noted at the Show Cause Hearing, the financial impact of Mr. Budri's actions is overwhelming. The Trustee testified that, to date, there is a total of $147,504.14 in funds to be distributed by the Debtor to creditors in this case, and, after payment of priority unsecured claims, there is $109,707.93 remaining to be distributed to the estate's general unsecured creditors. ECF No. 267 at 98:6–98:19; *see also* ECF No. 252, Tr.'s Ex. A. Payment of these funds would result in a distribution of approximately 65% of the general unsecured creditors' respective claims. *Id.* However, the Trustee further testified that the attorney's fees incurred by the Debtor and the Trustee **solely** in connection with Mr. Budri's filings—between February 23, 2026, and May 15, 2026—amount to **$56,400.15** in

administrative expenses that would be paid ahead of the general unsecured creditors under the Bankruptcy Code. ECF No. 267 at 98:20:–99:9; *see also* ECF No. 244, Debtor's Ex. 4. Put simply, Mr. Budri's actions in the span of only three (3) months have cost every other general unsecured creditor in this case—other than Mr. Budri—**approximately $53,000, a resulting 31% decrease in potential recovery on their claims**. ECF No. 267 at 99:11—100:4.

Adding to Mr. Budri's swath of destruction, there is the detriment he has caused the Court in the form of overloading its docket management procedures and creating a daily, **often hourly**, burden on its staff to handle his nonstop correspondence and filings. Mr. Budri has siphoned off countless hours of the Court's and its staff's time at a truly unsustainable pace, and every correspondence with Mr. Budri leads to countless more meritless and unprompted emails and attempted filings, each of which requires more of the Court's time and energy.[26] As his filings have continued, he has roped in additional Clerk of Court staff through unnecessarily copying staff members on his voluminous emails, and without permission to do so. No matter how many times he is warned to cease emailing the Court's or the Clerk of Court's staff, and no matter how many times his repetitive and frivolous motions for leave are denied, Mr. Budri continues to commit the exact same infractions.

To be clear, the Court and its staff are more than equipped to manage and oversee the Court's docket, as they have done so without issue for years. However, it is a testament to the level of disruption that Mr. Budri has caused that he has managed to monopolize the Court's time and resources to the degree that he has. Despite its unwavering dedication to effectively managing the **thousands of other cases** it has involving debtors, creditors, and other various parties with **actual,**

---

[26] There are days that members of the Court's staff arrive at the courthouse before 7:30 a.m. to more than five (5) new emails from Mr. Budri, and that is setting aside to additional correspondence the Court's staff receives throughout the rest of the work day.

**tangible interests at stake**, the Court states, in all seriousness, that Mr. Budri's continued presence on its docket is cancerous from a productivity standpoint.

It is under these realizations that the Court attempts to fashion an appropriate sanction. Mr. Budri's particular pattern of behavior allows the Court to conclude that any further instructions or restrictions by the Court will go unheeded, and any monteary sanctions will go unpaid. Accordingly, the answer for what the proper sanction should be is most likely tied to an essential component of Mr. Budri's continued behavior. Despite his ever-changing demands and grievances, there remains one consistent throughline in terms of what Mr. Budri so desperately wants—attention.

As his conduct in prior cases indicates, the most precious form of consideration to Mr. Budri is the constitutional mandate that requires the court to pay attention to its docket. In the same way that a raging inferno craves oxygen, Mr. Budri craves attention. Therefore, the only thing Mr. Budri has to lose is the attention of the Court—a resource that he mistakenly believes is constitutionally infinite. The Court is no longer willing to pay Mr. Budri the form of currency he covets the most. Much like his $179 claim, he has been paid in full with respect to the time and attention of this Court.

Therefore, pursuant to the Fifth Circuit's instructions in *Baum*—especially with respect to the unfathomable detriment Mr. Budri has caused the other parties in this case and the lack of any reasonable alternative sanction—the Court hereby enjoins Mr. Budri from **any further filings and/or attempted communication in this case**. Notwithstanding the foregoing, Mr. Budri may file a pleading or communicate with the Court and/or the Clerk of Court with respect to: (1) Mr. Budri's appellate rights wherein he seeks review by a higher court; (2) a request for a transcript in

connection with Case No. 24-33418; or (3) upon being expressly prompted to respond to any communications initiated by the Court or Clerk of Court.

To the extent Mr. Budri attempts to communicate with the Court and its staff, or the Clerk of Court, regarding any matter extraneous to the categories expressly enumerated herein, the Court and the Clerk of Court shall maintain **full discretion** as to whether any further responsive communication with Mr. Budri is necessary. However, if the Court or Clerk of Court responds to Mr. Budri in any capacity, such communication shall not be in violation of this Order. Finally, if Mr. Budri attempts to file or communicate with the Court and/or the Clerk of Court outside the narrow parameters established herein, the Court will impose a **monetary sanction of $179 per attempted filing**.

The Court does not come upon these sanctions lightly, and it recognizes the essentiality of a litigant's right to access the courts, especially a *pro se* litigant. Nevertheless, despite Mr. Budri's unfounded belief to the contrary, due process is not a blank check to be cashed in whenever convenient, and it is most assuredly not intended to be used as a vessel for prolific and profound abuse of the legal system. To the degree that Mr. Budri had a claim in this bankruptcy case, he achieved all that constitutional due process affords him—**full satisfaction of his claim**. However, the "rights" that Mr. Budri continues to assert are not tethered to anything found in the Constitution, but are instead derived from some toxic concoction of delusion and self-interest. Mr. Budri's continued flaunting of due process as an unbridled golden ticket of access to the Court is an affront to the Constitution that this Court will not entertain any longer. Not only has payment in full stripped Mr. Budri of any remaining standing in this case, this Order strips him of an audience to his cacophony.

The Court hopes that Mr. Budri will consider the Court's Order with great care, because further abuses could result in harsher sanctions.

### III. CONCLUSION

Accordingly, it is hereby

**ORDERED** that Adriano Budri is in contempt of court and therefore subject to sanctions pursuant to § 105(a) of the Bankruptcy Code; it is further

**ORDERED** that Mr. Budri is hereby enjoined from filing or attempting any further communications with the Court or Clerk of Court, including, but not limited to, any pleadings, email or written communications, phone calls, or copying the Court and Clerk of Court on inter-party correspondence in Case No. 24-33418. Notwithstanding the foregoing, Mr. Budri may file a pleading or communicate with the Court or Clerk of Court with respect to: (1) the exercise of any appellate rights wherein Mr. Budri seeks review by a higher court; (2) a request for a transcript in connection with Case No. 24-33418; or (3) upon being expressly prompted to respond to any communications initiated by the Court or Clerk of Court;[27] it is further

**ORDERED** that the Court and the Clerk of Court maintain full discretion as to whether they shall provide Mr. Budri any further responsive communication in connection with any filing, attempted filing, or attempted communication by Mr. Budri from the date of entry of this Order. For the sake of clarity, to the extent the Court or the Clerk of Court responds to Mr. Budri in any capacity, such communication **shall not be in violation of this Order**; it is further

---

[27] The Court is aware that Mr. Budri continues to pursue various forms of relief in legal proceedings outside of this Court that pertain to alleged grievances derived from Case No. 24-33418. To the extent Mr. Budri attempts to communicate with the Court or Clerk of Court with respect to any extraneous legal proceedings not expressly before this Court, such communication shall constitute a violation of this Order.

**ORDERED** that if Mr. Budri fails to comply with this Order, he shall immediately be sanctioned $179 per filing and/or communication from the date of entry of this Order. No further hearing shall be required prior to the imposition of further sanctions; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Order on Mr. Budri via first-class mail at 5029 County Road 605, Burleson, TX 76028, and via email at abudri64@gmail.com.

**###END OF ORDER###**